IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAVARUS LEACH, SR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 18-CV-947-NJR-RJD |
| | ) |
| DR. STEVEN RITZ and | ) |
| JACQUELINE LASHBROOK,[1] | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter is before the Court on the Report and Recommendation of United States Magistrate Judge Donald G. Wilkerson (Doc. 32), which recommends denying the Motion for Preliminary Injunction filed by Plaintiff Javarus Leach, Sr. ("Leach") (Doc. 13). The Report and Recommendation was entered on October 22, 2018[2] (Doc. 32), and Leach filed a timely objection (Doc. 33). For the following reasons, the Court adopts the Report and Recommendation and denies the Motion for Preliminary Injunction.

### BACKGROUND

On April 13, 2018, Leach, an inmate at Menard Correctional Center, filed a *pro se* Complaint alleging that Defendants have been deliberately indifferent to a serious medical condition (Doc. 1). Leach has two bumps/growths on his neck, which were diagnosed as keloids, which are an extreme overgrowth of scar tissue that often forms after injury or surgery (Doc. 1, pp. 11-12, 18; Doc. 32, p. 2). In approximately June 2017, Leach complained that the bumps were

---

[1] The Clerk's Office is **DIRECTED** to update the docket sheet to reflect the true and accurate names of the defendants: "Dr. Ritz" should be "Dr. Steven Ritz," and "Warden Lashbrook" should be "Jacqueline Lashbrook."
[2] Since that time, Judge Wilkerson retired, and this case was reassigned to Judge Reona J. Daly.

growing in size and had become painful and irritating (Doc. 1, pp. 8, 18). Leach saw a nurse in July 2017 and complained of intermittent burning, stinging, and itching on his neck at the site of the growths (Doc. 27-1, p. 5). Dr. Siddiqui saw Leach the following month and diagnosed his growths as keloid tumors (Doc. 27-1, p. 7). He found no evidence of active folliculitis (*Id.*). At Leach's request, Dr. Siddiqui sought approval to send Leach to an outside doctor to have the keloids surgically removed (Doc. 1, pp. 2, 22, 27). On August 17, 2017, Defendant Dr. Ritz denied the request for surgical evaluation (Doc. 27-1, p. 9), finding the keloids were cosmetic and did not meet the guidelines for an outside referral (Doc. 27-1, p. 9; Doc. 1, p. 22).

Leach received follow-up treatment for the keloids, including another exam by Dr. Siddiqui on January 12, 2018, in which the doctor determined no surgery or ultrasound was indicated (Doc. 27-1, p. 19). Leach saw nursing staff again in April 2018 and told them that the keloids were not improving (Doc. 27-1, pp. 20-28). On April 12, 2018, Leach requested steroid injections for the keloids (Doc. 27-1, p. 28). A request for collegial review was filed, and pictures of the keloids were ordered to assist the process (Doc. 27-1, p. 42-43).

On May 4, 2018, another physical exam was conducted and found that there were no signs of infection, draining, or redness (Doc. 27-1, p. 33). Defendant Dr. Ritz ultimately denied the request for steroid injections and a general surgery evaluation, finding that removal of the keloids was purely cosmetic and thus did not meet guidelines for an outside referral (Doc. 27-1, p. 38).

In his complaint, Leach seeks injunctive relief to require Defendant Dr. Ritz to approve surgery to remove the keloids and compensatory damages (Doc. 1, p. 10). On July 12, 2018, Leach filed a motion for preliminary injunction, only requesting a referral to a dermatologist to determine the type and severity of the growths located on his neck (Doc. 13).

In Judge Wilkerson's Report and Recommendation currently before the Court (Doc. 32), he recommends that the request for a preliminary injunction be denied. Judge Wilkerson

reasoned that the keloid tumors did not qualify as a serious medical condition, however, due to the defendants' failure to address this element, he deemed it to be conceded. Judge Wilkerson further reasoned that there is little to no evidence of an excessive risk to Leach's health. Instead, he found that the evidence suggests that Leach simply disagrees with the course of treatment he is receiving. Judge Wilkerson further found that there is no evidence Leach will suffer irreparable harm absent an injunction, because it is reasonable to infer that there has been no significant change in his medical condition between May 4 and August 21, 2018, and Leach's fears alone are not evidence of irreparable harm.

## DISCUSSION

Where timely objections are filed, this Court must undertake a *de novo* review of the Report and Recommendation. 28 U.S.C. § 636(b)(1)(B), (C); FED. R. CIV. P. 72(b); SDIL-LR 73.1(b); *Harper v. City of Chicago Heights*, 824 F. Supp. 786, 788 (N.D. Ill. 1993); *see also Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992). The Court may accept, reject, or modify the magistrate judge's recommended decision. *Harper*, 824 F. Supp. at 788. In making this determination, the Court must look at all of the evidence contained in the record and give fresh consideration to those issues to which specific objections have been made. *Id.*, *quoting* 12 Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 3076.8, at p. 55 (1st ed. 1973) (1992 Pocket Part).

As noted above, Leach has filed an objection to the Report and Recommendation (Doc. 33). This timely objection requires the Court to undertake a *de novo* review of the Report and Recommendation. Leach appears to take issue with Judge Wilkerson's conclusion that there is no reasonable likelihood Leach will prevail on the merits of his case. Specifically, Leach argues that he is experiencing pain from the keloids. He attaches a Wikipedia article in support of his position and to argue that the most effective treatment is radiotherapy. He also argues that he should be appointed counsel for this complex medical claim.

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997). The purpose of a preliminary injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). To obtain a preliminary injunction, a plaintiff has the burden of establishing that: (1) he is likely to succeed on the merits of his claim; (2) he has no adequate remedy at law; and (3) he is likely to suffer irreparable harm without the injunction. *Planned Parenthood of Indiana, Inc. v. Comm'r of Indiana State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012), citing *Am. Civil Liberties Union of Ill. v. Alvarez,* 679 F.3d 583, 589–90 (7th Cir. 2012).

Once the plaintiff has met his burden, the Court must weigh "the balance of harm to the parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest." *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984); *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). "This equitable balancing proceeds on a sliding-scale analysis; the greater the likelihood of success on the merits, the less heavily the balance of harms must tip in the moving party's favor." *Korte*, 735 F.3d at 665.

In the context of prisoner litigation, the scope of the Court's authority to enter an injunction is circumscribed by the Prison Litigation Reform Act ("PLRA"). *Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012). Under the PLRA, preliminary injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2).

As to Leach's first argument that he is experiencing pain and suffers from a serious medical condition, Judge Wilkerson already deemed this first element of a deliberate indifference claim to be conceded based on a lack of argument by Defendants. (Doc. 32, p. 4).

Leach also argues generally that Defendants were deliberately indifferent because they have failed to take responsible measures to treat his keloids. The second element a plaintiff must establish for a deliberate indifference claim is that a state official acted with the requisite culpable state of mind. *Dunigan ex rel. Nyman v. Winnebago Cnty.*, 165 F.3d 587, 590 (7th Cir. 1999). Federal courts will not interfere with a physician's decision to pursue a particular course of treatment unless that decision represents so significant a departure from accepted professional standards or practices that it calls into question whether the physician was actually exercising professional judgment. *Pyles v. Fahim*, 711 F.3d 403, 409 (7th Cir. 2014).

Leach also argues that receiving some form of medical care does not automatically defeat a claim of deliberate indifference, citing *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007). The Seventh Circuit Court of Appeals specifically stated in *Edwards* that "a plaintiff's receipt of *some* medical care does not automatically defeat a claim of deliberate indifference "if a fact finder could infer the treatment was 'so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate' a medical condition." *Id*.

In *Wheeler v. Talbot*, 695 F. App'x 151, 154 (7th Cir. 2017), the plaintiff suffered from keloids, and the Seventh Circuit Court of Appeals determined that the plaintiff's keloids were not a serious medical condition and that the physician that treated him was not deliberately indifferent. The keloids that the plaintiff in *Wheeler* suffered from are vastly similar to the keloids that Leach discusses in his complaint. *Id* at 155. The physician who treated the plaintiff in *Wheeler* also concluded that the keloids were purely cosmetic blemishes and similarly noted the high risk of the keloid recurrence from the surgical removal. *Id*.

The medical care provided by the medical staff at Menard Correctional Center is not "blatantly inappropriate" such that it rises to the level of deliberate indifference to support an Eighth Amendment claim. The documented medical examinations have repeatedly found no

signs of infection, draining, redness, or folliculitis (Doc. 27-1, pp. 7, 15, 18, 21, 28, 33). Leach also was provided with Acetaminophen and Ibuprofen for his pain and discomfort (Doc. 27-1, pp. 5, 15). Based on this review, the Court agrees with Judge Wilkerson's finding that Leach is unable to establish a likelihood of success on the merits.

Leach also has not provided any argument or evidence that he will suffer irreparable harm absent an injunction. Any fear of developing cancer or permanent disfigurement is not, by itself, evidence of irreparable harm. In sum, the Court finds no justification for the "extraordinary and drastic remedy" of injunctive relief. *Mazurek*, 520 U.S. at 972. Leach has failed to reach the threshold burden for injunctive relief, and the Court finds no reason to reject Judge Wilkerson's recommendation.

Finally, Leach asks the Court to appoint him counsel as the case progresses. The Court must ask two questions when determining whether to appoint counsel. *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014). The first inquiry is whether the "indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so." *Id.* at 711, citing *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007). If the first inquiry is met, the second inquiry is, "given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Id*.

The Court need not address the first inquiry because the second inquiry is not satisfied. With regard to competency, the test is "whether the difficulty of the case, factually and legally, exceeds the particular plaintiff's capacity as a lay person to coherently present it to the judge or jury himself." *Id.* at 712. The complexity of Leach's claim is not great. Leach has shown that he comprehends his claim by producing documents in his filings that detail the medical treatment he has received. He also has demonstrated an understanding of the procedural rules up to the present point, as well as the ability to make intelligible arguments through his previous filings. As Judge Daly previously explained to Leach a few weeks ago when she denied his motion for

counsel (*see* Doc. 40), Leach's concerns are not unique to him as a *pro se* litigant and do not warrant recruitment of counsel at this time.

## Conclusion

For the reasons set forth above, the Court **OVERRULES** the Objection to Judge Wilkerson's Report and Recommendation (Doc. 33), **ADOPTS** Judge Wilkerson's Report and Recommendation (Doc. 32), and **DENIES** the Motion for Preliminary Injunction (Doc. 13). The Clerk's Office is **DIRECTED** to update the docket sheet in accordance with footnote 1.

**IT IS SO ORDERED.**

**DATED: March 26, 2019**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**