IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JAVARUS LEACH, SR.,

           **Plaintiff,**

v.

STEPHEN RITZ, M.D., and
FRANK LAWRENCE,

           **Defendants.**

Case No. 18-cv-947-NJR-RJD

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court on a Report and Recommendation of United States Magistrate Judge Reona J. Daly (Doc. 71), which recommends that the Motions for Summary Judgment filed by Defendants Dr. Stephen Ritz[1] (Doc. 53) and Warden Frank Lawrence (Doc. 68) should be granted. On September 19, 2019, Plaintiff Javarus Leach, Sr., filed an objection (Doc. 72).

## BACKGROUND

On April 13, 2018, Plaintiff Javarus Leach, Sr. ("Leach"), an inmate in the Illinois Department of Corrections ("IDOC"), filed this *pro se* lawsuit pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights were violated while he was incarcerated at Menard Correctional Center ("Menard") (Doc. 1).

On May 16, 2018, this Court allowed Leach to proceed on the following claim (Doc. 7):

---

[1] The Clerk's Office is **DIRECTED** to update the docket sheet to reflect the true and accurate name of the following defendant: "Steven Ritz" should be "Stephen Ritz."

**Count 1**: Eighth Amendment deliberate indifference claim against Dr. Ritz for denying Leach's referral for possible surgery to remove his painful keloids.

Leach alleged that his keloids required surgery, and Dr. Ritz's denial of a referral for surgery constituted deliberate indifference. The Warden of Menard, previously Jacqueline Lashbrook and now Frank Lawrence, was added to the suit for purposes of injunctive relief.[2]

At all times relevant to this case, Leach was housed at Menard. Leach has two bumps/growths on the right/front side of his neck, which were diagnosed as keloids sometime in 2017 (Doc. 1, pp. 11-12, 18). On July 24, 2017, Leach was seen at nurse sick call for complaints of intermittent "burning/stinging/itching" on the right side/front of neck (Doc. 1, p. 23). Leach rated the pain from the lesions as "8/10" for the "1-2 months" preceding the nurse sick call (*Id.*). The nurse referred Leach to a physician; he was seen by Dr. Siddiqui on August 8, 2017 (Doc. 1, p. 25). Dr. Siddiqui noted the two lesions on Leach's neck appeared to be keloids, found no signs of active folliculitis, and documented Leach's desire to have the keloids removed by surgery (*Id.*)

On August 17, 2017, Dr. Ritz, the Corporate Utilization Management Medical Director, reviewed Dr. Siddiqui's referral for surgery on Leach's "fibrous nodules" and denied referral for surgery (Doc. 1, p. 27). In his review, Dr. Ritz noted the two nodules on the anterior neck appeared to be keloids, had been present for 12-18 months, and that Leach reported intermittent burning, stinging, and itching for 1-2 months (Doc. 54-1,

---

[2] Pursuant to Federal Rule of Civil Procedure 25, Frank Lawrence has been substituted in place of Jacqueline Lashbrook as acting Warden of Menard Correctional Center. The Clerk's Office is **DIRECTED** to update the docket sheet to reflect such change.

p. 73). Dr. Ritz stated removal would be cosmetic, and Leach should be treated onsite at Menard (*Id.*).

On December 1, 2017, Leach was seen at another nurse call (Doc. 54-1, p. 79). The nurse documented that the keloids showed no signs of drainage or redness, and Leach was advised not to squeeze or pick at the keloids and not to shave with dull razors (*Id.*). Leach reported that at the site of the keloids he experienced a constant stabbing pain rated "6/10" (*Id.*). On December 8, 2017, Leach was seen by Nurse Practitioner Zimmer regarding his keloids (Doc. 54-1, p. 81). On December 22, 2017, Leach was seen for a follow-up with Zimmer, who noted no improvement from using Bactrim and found the keloids still exhibited no redness or drainage (Doc. 54-1, p. 82). Zimmer prescribed a hydrocortisone cream to be applied daily for two weeks (*Id.*).

On January 12, 2018, Dr. Siddiqui saw Leach regarding the keloids on his neck, and he reassured Leach that there was no need for surgery or an ultrasound (Doc. 54-1, p. 83). On April 7, 2018, Leach returned to nurse sick call regarding the keloids on his neck, but there were no signs of infection (Doc. 54-1, p. 87). On April 12, 2018, Leach was seen by Zimmer and requested steroid injections for the keloids (Doc. 54-1, p. 93). Zimmer noted no signs of infection and no increase in growth of the keloids and referred Leach to Dr. Siddiqui (*Id.*). On April 16, 2018, Dr. Siddiqui saw Leach and noted Leach was demanding steroid injections and a referral to a dermatologist for treatment of his keloids (Doc. 54-1, p. 94). Dr. Siddiqui documented Leach was threatening lawsuits and referred Leach to collegial review (*Id.*).

On April 19, 2018, Dr. Ritz reviewed the request for a dermatology referral and requested pictures of the keloids (Doc. 54-1, p. 96). On April 20, 2018, Dr. Ritz noted the

keloids were not infected (*Id.*). On May 1, 2018, photos of Leach's keloids were taken and sent to Dr. Ritz for review (Doc. 54-1, p. 98). Dr. Ritz denied the request for a dermatology referral and determined steroid injections were not medically indicated (Doc. 54-1, p. 99). Dr. Ritz directed Leach be monitored on-site (Doc. 54-1, p. 100). Based on a review of the medical records, Leach did not return to the health care unit following the denial.

Leach testified regarding the pain of his keloids: "It's, like, a sharp pain. At times they're sensitive. Like when I lay down, I can't lay on them. And it will be, like, a burning sensation at times also." (Doc. 69-1, p. 22). Leach further testified that there is no time when the keloids do not hurt and that he last sought treatment last year (*Id.*). When questioned how the keloids affect his daily activities, Leach testified they constantly itch and are sore and that he cannot touch them very much (Doc. 69-1, p. 45). Leach also testified he did not want to be around other inmates because he is afraid involvement in a fight could cause further harm (*Id.*).

## THE REPORT AND RECOMMENDATION

Judge Daly recommends granting summary judgment for Dr. Ritz because Leach's keloids do not constitute a serious medical need, and Dr. Ritz was not deliberately indifferent to any serious medical need (Doc. 71). Specifically, Judge Daly found: (1) Leach's subjective complaints of pain were insufficient to establish an objectively serious medical condition, and (2) Dr. Ritz's treatment recommendations were not such a substantial departure from accepted professional judgment, or so plainly inappropriate, as to permit the inference that he intentionally or recklessly disregarded Leach's medical needs (*Id.*).

Judge Daly also recommends granting summary judgment for Warden Lawrence

because he was sued in his official capacity solely for purposes of effectuating any injunctive relief.

### LEGAL STANDARDS

Leach has filed a timely objection to the Report and Recommendation. When timely objections are filed, the Court must undertake a *de novo* review of the Report and Recommendation. 28 U.S.C. § 636(b)(1)(B), (C); FED. R. CIV. P. 72(b); SDIL-LR 73.1(b); *Harper v. City of Chicago Heights*, 824 F. Supp. 786, 788 (N.D. Ill. 1993); *see also Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992). This requires the Court to look at all evidence contained in the record and give fresh consideration to those issues to which specific objections have been made and make a decision "based on an independent review of the evidence and arguments without giving any presumptive weight to the magistrate judge's conclusion." *Harper*, 824 F. Supp. at 788 (citing 12 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3076.8, at p. 55 (1st ed. 1973) (1992 Pocket Part)); *Mendez v. Republic Bank*, 725 F.3d 651, 661 (7th Cir. 2013). The Court may then "accept, reject or modify the magistrate judge's recommended decision." *Harper*, 824 F. Supp. at 788.

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener, 520 F.3d 678, 685* (7th Cir. 2008). The

moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970).

In responding to a motion for summary judgment, the nonmoving party may not simply rest upon the allegations contained in the pleadings, but must present specific facts to show a genuine issue of material fact exists. *Celotex*, 477 U.S. at 322-26; *Anderson*, 477 U.S. at 256-57. A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact only exists if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson*, 477 U.S. at 252.

## DISCUSSION

### I. Serious Medical Need

To prevail on a deliberate indifference claim under the Eighth Amendment, the plaintiff must first show that his condition was "objectively, sufficiently serious" and second, that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted). Leach has objected to the Report and Recommendation's findings as to both prongs of this test, so first it must be determined whether Leach suffers from an objectively serious medical condition.

The Seventh Circuit has embraced the following factors as potentially indicating an objectively serious medical condition: "The existence of an injury that a reasonable

doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997) (quotations and citations omitted). In other words, an objectively serious medical condition "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (quotations and citations omitted).

Leach argues that his keloids are objectively serious because Zimmer once requested an ultrasound to determine what Leach's keloids were (Doc. 54-1, p. 82), the keloids are in a dangerous spot on his neck, they cause him to lose sleep, and they cause pain (Doc. 72).

In *Wheeler*, a plaintiff brought a similar Eighth Amendment deliberate indifference claim seeking to have his keloids surgically removed. *Wheeler v. Talbot*, 695 F. App'x 151 (7th Cir. 2017). Specifically, the plaintiff complained his keloids caused him itching, oozing, tenderness and pain. *Id.* at 154. The Seventh Circuit Court of Appeals found that, although the plaintiff alleged that the keloids bled and oozed at times, the medical director's examinations showed no signs of infection, oozing, bleeding, or trauma, which reasonably suggested that the keloids were cosmetic problems only. *Id.* The Seventh Circuit held that since the examinations suggested that the keloids "were cosmetic problems only, [the plaintiff] could not persuade a rational jury that surgery was medically advisable, let alone that a serious condition had been ignored." *Id. Wheeler* demonstrates that, although the occasional bleeding and oozing of scar tissue could be "an injury that a reasonable doctor or patient would find important and worthy of

comment or treatment[,]" *Gutierrez*, 111 F.3d at 1373 (quotations and citations omitted), it might not be enough to indicate an objectively serious medical condition. *Wheeler*, 695 F. App'x at 154.

Leach's allegations all fit within the circumstances *Gutierrez* outlines as possibly showing an objectively serious medical condition, yet these circumstances are only factors for the Court to consider. The Seventh Circuit has also adopted the standard "a medical condition [is] 'serious' where the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Gutierrez*, 111 F.3d at 1373. Dr. Ritz stated in his Declaration that, if Leach received the keloid removal surgery, there was a potential risk the keloids could return to a greater degree (Doc. 54-2, ¶ 15). Furthermore, it is his opinion that the failure to remove the keloids was not going to result in further significant injury unless the keloids were infected (Doc. 54-2, ¶16-17). Although Leach has been impacted by the keloids, no rational jury would find that the failure to surgically remove the keloids "could result in further significant injury or the unnecessary and wanton infliction of pain." *Gutierrez*, 111 F.3d at 1373.

## II. Deliberate Indifference

Even if Leach could establish that his keloids presented a serious medical condition, the Court does not find that Dr. Ritz was deliberately indifferent. The crux of Leach's objections are that the keloid treatment he received from medical staff at Menard and Dr. Ritz was so inadequate that it reached a sufficiently culpable state of mind to be characterized as deliberate indifference. Leach contends that he suggested different medical treatment options to Dr. Siddiqui every time he met with him, he was only

provided 12-18 Tylenol pills per medical visit, the hydrocortisone cream provided by Zimmer was not for the keloids but for an ingrown hair problem, and the steroid shots Leach requested were needed to stop his pain (Doc. 72). But a mere disagreement with the course of the inmate's medical treatment does not constitute an Eighth Amendment claim of deliberate indifference. *See Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996).

"'[D]eliberate indifference' (in this circuit) is merely a synonym for intentional or criminally reckless conduct[.]" *Salazar v. Chicago*, 940 F.2d 233, 238 (7th Cir. 1991). Dr. Ritz's conduct was not deliberately indifferent just because Leach disagreed with the prescribed course of treatment. *See Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007) ("Mere medical malpractice or a disagreement with a doctor's medical judgment is not deliberate indifference."); *see also Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) ("Under the Eighth Amendment, [prisoner] is not entitled to demand specific care. She is not entitled to the best care possible. She is entitled to reasonable measures to meet a substantial risk of serious harm to her. The defendants have taken those measures."). Although Leach is very obviously dissatisfied with his treatment, has not demonstrated that Dr. Ritz was aware of a substantial risk of harm from the keloids, and his "responses were so plainly inappropriate as to permit the inference that the defendant intentionally or recklessly disregarded his need." *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). "Intentional or criminally reckless conduct" is a high standard of proof, and because a fair-minded jury would not return a verdict for Leach on the evidence presented, the Report and Recommendation was correct in finding that Dr. Ritz was not deliberately indifferent.

Finally, Warden Lawrence is a defendant in his official capacity solely for the

purpose of effectuating any injunctive relief. Because Leach cannot succeed on the merits of his claim, he is not entitled to injunctive relief, and summary judgment is granted in favor of Defendant Lawrence as well.

## CONCLUSION

For the reasons stated above, the Court **ADOPTS** Magistrate Judge Daly's Report and Recommendation (Doc. 71) and **GRANTS** the Motions for Summary Judgment filed by Defendant Dr. Ritz (Doc. 53) and Defendant Warden Frank Lawrence (Doc. 68). This action is **DISMISSED with prejudice**, and the Clerk of Court is **DIRECTED** to enter judgment accordingly.

Pursuant to Federal Rule of Civil Procedure 25, Frank Lawrence is **SUBSTITUTED** in place of Jacqueline Lashbrook as acting Warden of Menard Correctional Center. The Clerk's Office is **DIRECTED** to update the docket sheet to reflect this change and to reflect the true and accurate name of Defendant "Stephen Ritz" in accordance with footnotes 1 and 2.

**IT IS SO ORDERED.**

**DATED:** December 10, 2019

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**